UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEVEN CORRIVEAU,

    Plaintiff,

v.                                        Case No. 8:18-cv-2936-T-CPT

ANDREW M. SAUL,
Commissioner of Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons discussed below, the Commissioner's decision is reversed and remanded.

I.

The Plaintiff was born in 1985, is high school educated, and has past relevant work experience as a test driver and plumber's helper/apprentice. (R. 21, 36-38, 72, 80, 205, 212). On September 30, 2015, the Plaintiff applied for DIB and SSI, claiming disability as of September 14, 2015, due to a heart condition, hypertrophic

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit.

cardiomyopathy, and stage three melanoma skin cancer. (R. 72, 80, 205, 212, 236). The Social Security Administration (SSA) denied his applications both initially and on reconsideration. (R. 70-71, 90-91).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on November 27, 2017. (R. 31-68). The Plaintiff was represented by counsel at that hearing and testified on his own behalf. (R. 36-57, 59-60). A vocational expert (VE) also testified. (R. 38, 57-67). Following the hearing, the Plaintiff submitted a memorandum challenging certain aspects of the VE's testimony. (R. 311-33).

In a decision dated March 8, 2018, the ALJ found that the Plaintiff: (1) met the insured status requirements through September 30, 2015, and had not engaged in substantial gainful activity since his alleged onset date of September 14, 2015; (2) had the severe impairments of obesity, hypertrophic cardiomyopathy, recurrent arrhythmias, chronic heart failure, stage three malignant melanoma, non-sustained ventricular tachycardia, and status post implantable cardioverter defibrillator; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform sedentary work with some additional postural and environmental limitations;[2] and (5) was unable to engage in his past relevant work

---

[2] These limitations restricted the Plaintiff to no more than occasional climbing of ramps or stairs, crawling, crouching, kneeling, balancing, and stooping; no more than occasional exposure to extreme temperatures, humidity, and vibration; and no more than moderate exposure to hazards and irritants. (R. 15). They also prohibited the Plaintiff from climbing ladders, ropes, or scaffolds. *Id.*

but, based on the VE's testimony, could perform three occupations that exist in significant numbers in the national economy—namely, stuffer, lens inserter, and table worker. (R. 10-24). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 24).

The Appeals Council denied the Plaintiff's request for review. (R. 1-6). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[3] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4).[4] Under this process, an ALJ must determine

---

[3] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). While the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that he cannot perform the work identified by the Commissioner. *Id.* In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided that the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v.*

4

*Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted). In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "[W]hile the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to [his] legal conclusions." *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citations omitted).

### III.

The Plaintiff argues on appeal that the ALJ erred at step five of the sequential evaluation process in accepting the VE's job numbers for the three identified positions. (Doc. 22 at 5-8). The Commissioner counters that the VE's testimony provides substantial evidence to support the ALJ's determination, and that the ALJ's decision to accept the VE's testimony is in line with the governing authority. *Id.* at 8-16. Upon a thorough review of the record and the parties' submissions, the Court finds that the particular circumstances presented here require reversal.

As noted above, at step five of the sequential evaluation process, the burden of proof temporarily shifts to the Commissioner "to show that 'there is other work available in significant numbers in the national economy that the claimant is able to perform'" despite his impairments. *Sampson*, 694 F. App'x at 734 (quoting *Jones*, 190 F.3d at 1228); *see also* 20 C.F.R. §§ 404.1560(c), 416.960(c) ("[T]o support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are

5

responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do . . . ").

To carry this burden, the Commissioner may "take administrative notice of reliable job information available from various governmental and other publications," including the Dictionary of Occupational Titles (DOT)[5] and other sources set forth in the Regulations. 20 C.F.R. §§ 404.1566(d), 416.966(d). The Regulations also permit the Commissioner to predicate his decision at step five on information supplied by a VE. *Id.* at §§ 404.1566(e), 416.966(e); *Phillips*, 357 F.3d at 1240. "A [VE] is an expert on the kinds of jobs an individual can perform based on his . . . capacity and impairments." *Phillips*, 357 F.3d at 1240.

"When the ALJ uses a [VE], the ALJ will pose hypothetical question(s) to the [VE] to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Id*. In rendering an opinion, "a VE may rely on [her] knowledge and expertise without producing detailed reports or statistics in support of [her] testimony." *Griffin v. Comm'r of Soc. Sec.*, 2018 WL 3352929, at *10 (M.D. Fla. June 20, 2018) (citing *Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010); *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012)), *report and recommendation adopted*, 2018 WL 3344535 (M.D. Fla. July 9, 2018). " An ALJ may, in turn, base his

---

[5] The DOT is "an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington*, 906 F.3d at 1357 n.2.

step-five determination solely on the VE's testimony. *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019) (per curiam) (citation omitted).

Irrespective of whether the ALJ relies exclusively on the VE, "[t]he ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). The Supreme Court has declined to impose a categorical rule to address when a VE's job estimates count as "substantial evidence." *Biestek*, 139 S. Ct. at 1154, 1157. Rather, the Court has emphasized that determining the sufficiency of VE testimony calls for a case-by-case inquiry. *Id.* at 1157.

Here, in response to the ALJ's hypothetical question, the VE testified that an individual with the Plaintiff's age, education, past work experience, and RFC could perform three different jobs: stuffer (DOT #731.685-014); lens inserter (DOT #731.687-026); and table worker (DOT #739.687-182). (R. 58). The VE stated that each of these occupations is sedentary in nature and that the approximate number of available positions for each job nationwide is 300,000, 200,000, and 360,000, respectively. *Id.* Upon further inquiry by the ALJ, the VE explained that these jobs were a "representative sampling" and that her testimony was consistent with the DOT. (R. 58-59).

On cross-examination by Plaintiff's counsel, the VE testified initially that she arrived at these job estimates with the aid of a computer software program, Job Browser Pro, and that she pulled statistics from the Occupational Employment

7

Statistics (OES) Quarterly.[6] (R. 60). Plaintiff's counsel then proceeded to question the VE about the methodology she used to arrive at the job numbers for each of the three occupations. The resulting colloquy is hardly a model of clarity, but—based on the Court's reading—can be summarized as follows.

Plaintiff's counsel first asked the VE about the stuffer position and the Standard Occupational Classification (SOC) grouping in which that position fell.[7] (R. 61). Asserting that this SOC group consisted of a total of "74 different DOT occupations" and that the "total number of jobs in that SOC group" was "about 386,520," counsel inquired how the VE arrived at the 300,000 figure she calculated for the stuffer position. *Id*. The VE responded she "looked at approximately 17 titles within that grouping," "tr[ied] to be careful about eliminating any jobs" that were not full-time positions or "beyond . . . the sedentary level," and "those [we]re the jobs that Job Browser present[ed] for us." *Id*. The VE added that "we know . . . when we look at extensive grouping or a group like that . . . although there may be different job titles . . . *the tasking is very similar in those jobs*." (R. 62) (emphasis added). The VE conceded

---

[6] The OES "program produces employment and wage estimates annually for over 800 occupations . . . for the nation as a whole, for individual states, and for metropolitan and nonmetropolitan areas." Occupational Employment Statistics, U.S. Bureau of Labor Statistics, https://www.bls.gov/oes/#data. The OES program also provides "national occupational estimates for specific industries" as well. *Id*.

[7] The SOC system, which is part of the OES, groups workers "into one of 867 detailed occupations according to their occupational definition," and also groups together those occupations that have "similar job duties, and in some cases skills, education, and/or training." Standard Occupational Classification, U.S. Bureau of Labor Statistics, https://www.bls.gov/soc/.

that, of the seventy-four DOT occupations in the SOC group, only one was sedentary. *Id.*

With respect to the lens inserter position, the VE acknowledged that this occupation was one of 1,590 DOT occupations within the relevant SOC group and that the total number of available jobs in that grouping was 251,000. *Id.* When asked if the lens inserter position was the "main" occupation within that grouping, the VE did not answer the question directly, responding instead that "you can't go through extensive groups and give weight to each individual job title, because we don't know the percentages. . . . [W]e don't have that individualized data." (R. 62-63).

With respect to the table worker position, the VE agreed with Plaintiff's counsel that this position was one of 782 DOT occupations within the pertinent SOC group and that the total number of available jobs in that group was 518,000. (R. 63-64). Although the VE admitted that the 360,000 jobs she estimated for the table worker position were "not necessarily" exclusive to table workers, she stated that it is "a representative DOT" from a statistical group where "*the tasking is essentially the same*." (R. 64) (emphasis added). The VE also testified that she arrived at the 360,000 figure after "[r]educing to sedentary" and "taking into account full-time" employment. (R. 65).

Following the hearing, the Plaintiff submitted a memorandum to the ALJ in which he presented data from the United States Census, County Business Patterns.[8]

---

[8] This publication is listed in the Regulations as a source of "reliable job information." 20 C.F.R. §§ 404.1566(d), 416.966(d).

(R. 311-33). Based on that data, the Plaintiff claimed that: (1) there were only 15,719 jobs in the optical instrument and lens manufacturing industry, and lens inserter was only one of several occupations in that industry; (2) there were a mere 6,394 jobs in the doll, toy, and game manufacturing industry, and not all were stuffer positions; and (3) while there did not appear to be a survey listing the table worker position, there were only 30,071 positions in "other millwork (including flooring)," which the Plaintiff contended was the closest equivalent industry. (R. 311-12). In light of this information, the Plaintiff argued in part: "The [VE] testified that she relied on 'Job Browser Pro', a private software program, to come up with the number of jobs. It is posited that based on information from governmental resources, either the program is seriously flawed, or the [VE] did not properly utilize the program." (R. 312).

In his decision, the ALJ rejected the Plaintiff's argument for several reasons, stating:

> First, at the hearing, the representative stipulated to the [VE's] qualifications. As seen in the [VE's] resume . . . [she] has the knowledge, experience and education to qualify as an expert and provide an opinion as a [VE].
>
> Next, at the hearing, the claimant's representative questioned the [VE] about the source of the job numbers provided above. Specifically, the representative asked whether the [VE's] testimony [was] consistent with the U.S. Bureau of Labor and Statistics – Occupational Employment Data. The [VE] responded she uses "Job Browser Pro" and U.S. Bureau of Labor Occupational Employment Statistics. *Even though these sources provide numbers by Standard Occupational Characteristics (SOC) codes, which may contain multiple DOT codes, the [VE] testified that it is the tasking that she reviews from these sources. She testified that these are jobs with like tasking in the respective group and the specific job would not be in the group otherwise.*

10

(R. 22-23) (emphasis added and internal citations omitted). Adding that he is entitled to rely upon the VE for her expertise, the ALJ overruled the Plaintiff's objection, accepted the VE's testimony, and "determined that the [VE's] testimony is consistent with . . . the [DOT]." (R. 23).

Although not disputing the VE's expertise, the Plaintiff now argues that the VE's testimony does not provide substantial evidence for the ALJ's step-five finding. (Doc. 22 at 5-8). In support of this argument, the Plaintiff asserts that the VE's job numbers are "not relevant to the particular DOT occupation she identified" but rather are based on the larger SOC groups. *Id.* He further submits that, because the VE did not identify all of the DOT positions within the applicable SOC group in estimating these figures, the ALJ could not have determined whether the VE's testimony was actually consistent with the DOT. *Id.*

The Court agrees with the Plaintiff in part and finds that the VE's testimony does not provide an adequate basis for the ALJ's determination that, in light of the Plaintiff's RFC and other factors, there are a significant number of jobs in the national economy the Plaintiff can perform. Several considerations inform the Court's conclusion.

To begin, both the VE and ALJ explicitly acknowledged that the employment figures upon which they relied were tied to larger SOC groups, not just the three positions the VE identified. The ALJ nonetheless asserted that these numbers were

11

valid because they all involved "jobs with like tasking."[9] The problem with the ALJ's analysis is that the meaning and scope of the phrase "like tasking" was never made sufficiently clear at the hearing or in the ALJ's decision. Nor has the Commissioner cited any authority that defines this phrase and/or explains how it can serve as a proper substitute for the requirement that the ALJ "articulate specific jobs that the Plaintiff can perform." *Webster*, 773 F. App'x at 555.

The ALJ's reliance on the VE's job figures suffers from an additional, related deficiency. The VE testified she understood that the SOC groups consisted of jobs with "similar" tasks but varying exertional levels (i.e. sedentary, light, medium, etc.), and that she arrived at her numbers by eliminating positions in the SOC groups that were not sedentary and not full-time. As noted above, the ALJ construed the VE's job figures to include the three positions the VE identified *as well as* other like-tasking jobs in the SOC groups in which those positions fell. At no point during the hearing, however, did the VE testify with any clarity that her estimated figures for both the three identified jobs *and* the like-tasking jobs accounted for *all* of the Plaintiff's RFC limitations included in the ALJ's hypothetical, i.e., sedentary work with additional postural and environmental restrictions, or that the Plaintiff could perform those "like tasking" jobs.

In light of the above, the Court cannot say that the ALJ fulfilled his duty to identify specific jobs available in significant numbers in the national economy that the

---

[9] It is not clear that the ALJ's "like tasking" rationale applies to the lens inserter position, as the VE did not expressly testify to that effect at the hearing. (R. 62-63).

12

Plaintiff is able to engage in despite his impairments. *See Webster*, 773 F. App'x at 555; *Sampson*, 694 F. App'x at 734.

The decisions in *Griffin*, 2018 WL 3352929, and *Smith v. Berryhill*, 2018 WL 2227225 (N.D. Fla. Apr. 12, 2018), *report and recommendation adopted*, 2018 WL 2225256 (N.D. Fla. May 14, 2018) support the Court's conclusion that the ALJ's reliance on such testimony does not constitute substantial evidence in this case.

In *Griffin*, the VE identified three occupations the plaintiff could perform and, based on OES job statistics, testified that there were 300,000 or more jobs for the OES categories containing each of these positions. 2018 WL 3352929, at *8. On appeal to the district court, the plaintiff argued that these job numbers were unreliable because the VE failed to account for the fact that they were based on OES categories, which encompassed more than the three positions designated by the VE. *Id.*

After reviewing the issue, the court remanded the matter, finding that the VE failed to "reduce the numbers" to the specific jobs he identified "in the first instance." *Id*. at *10. As a result, the court determined that substantial evidence did "not support the ALJ's reliance on the VE's testimony . . . because the VE did not substantiate how many of the identified jobs a person with [p]laintiff's RFC would be able to perform." *Id*. The court added that, although it recognized "the three categories the VE identified contained a large number of total jobs, it [could not] speculate that substantial evidence supports the finding the number of jobs [p]laintiff can perform are significant." *Id*.

Likewise, in *Smith*, the court remanded the matter "for a determination of whether there are other jobs, as opposed to categories of jobs, in the national

economy" where the VE's job numbers appeared to be premised on OES groups containing more than one DOT occupation. 2018 WL 2227225, at *7-8. In response to the government's argument that the plaintiff could perform one of the jobs—that of cuff folder—included in one OES group, the *Smith* court stated:

> The problem, as plaintiff points out, is the VE failed to identify the number of cuff folder positions available in the national economy. Instead, she testified to the number of jobs available in the OES category that includes the position of cuff folder. *Although there may well be ample cuff [f]older jobs—and even additional jobs within that OES category—plaintiff can perform, the VE did not testify to that fact. The ALJ's finding plaintiff could perform other jobs in the national economy based on the VE's testimony regarding the cuff folder position thus is not supported by substantial evidence in the record.*

*Id.* at *8 (emphasis added).

As in *Griffin* and *Smith*, the job figures the VE supplied and upon which the ALJ relied were not linked to specific positions but to a group of jobs—including the three she identified—that involved so-called "like tasking." And, as noted above, it is not evident from VE's testimony that the Plaintiff could actually engage in these "like tasking" positions given his RFC. As a result, the Court finds that the ALJ's step-five decision, predicated on the VE's testimony, is not supported by substantial evidence.[10]

---

[10] In rendering this determination, the Court is by no means suggesting that VEs may not use OES or SOC data to arrive at their job number estimates. The Court recognizes that other courts, in distinguishable circumstances, have found such data to constitute substantial evidence. *See, e.g., Grome v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4594597, at *4 (M.D. Fla. Sept. 23, 2019) (rejecting plaintiff's argument that ALJ improperly relied on VE's testimony "that there was a significant number of jobs in the national economy that [p]laintiff could have performed" where, among other things, plaintiff's counsel "did not question the job numbers cited by the VE, the methodology used to arrive at those numbers, and/or the consistency of the VE's testimony with the information provided by any other source, including the OES"

14

The decisional authority upon which the Commissioner relies does not dictate a different conclusion. Contrary to the Commissioner's assertion (Doc. 22 at 9-10), this case does not involve a situation where a claimant seeks to attack the reliability of a VE's testimony based on a purported conflict with the numbers found in the OES and/or SOC. *See Webster*, 773 F. App'x at 556 ("[T]his Court has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics in the OES."); *Moore v. Saul*, 2020 WL 814003, at *3 (M.D. Fla. Feb. 19, 2020) (same).

Nor does this case involve the circumstance—as the Commissioner suggests (Doc. 22 at 10-11, 13-14)—where a claimant fails to challenge a VE's job numbers at the administrative level and then attempts to do so for the first time in federal court. *See Webster*, 773 F. App'x at 555 (rejecting plaintiff's argument that the VE's testimony was unreliable based, in part, on the fact that plaintiff failed to question the VE on the matter at the hearing); *Pace v. Berryhill*, 760 F. App'x 779, 782 (11th Cir. 2019) (per curiam) (affirming Commissioner's decision to rely on VE's calculation of number of positions plaintiff could perform where, among other things, plaintiff "did not object

---

and collecting cases in support); *Guidry v. Astrue*, 2009 WL 4884282, at *5 (D. Colo. Dec. 10, 2009) (finding VE testimony adequate where the VE, "[r]elying upon OES . . . compared the number of consultant jobs in the economy with the statistics regarding industries that use medical consultants, estimating there were 21,000 medical consultant jobs in the United States and 1,000 jobs in the region . . . . [The VE] also compared the number of medical doctors in industries using medical consultants, a process resulting in an estimated 28,000 jobs in the country and 1,400 in the . . . region."). Unlike such cases, however, Plaintiff's counsel here challenged the VE's testimony at the administrative level and—for the reasons stated above— neither the VE nor the ALJ sufficiently explained the basis for the estimated number of jobs the Plaintiff could actually perform based on his RFC.

15

to that calculation at the hearing"); *Teague v. Comm'r of Soc. Sec.*, 743 F. App'x 410, 412 (11th Cir. 2018) (per curiam) (rejecting plaintiff's claim that ALJ erred in relying on VE's unchallenged and "unrebutted" hearing testimony that plaintiff could perform a substantial number of jobs in the national economy); *Grome*, *supra*.[11]

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is reversed, and the case is remanded for further proceedings before the Commissioner.

2. The Clerk of Court is directed to enter Judgment in the Plaintiff's favor and to close the case.

3. The Court reserves jurisdiction on the matter of fees and costs pending further motion.

DONE and ORDERED in Tampa, Florida, this 31st day of March 2020.

*/s/ Christopher P. Tuite*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record

---

[11] While not necessary to this decision, the Court notes that the Commissioner's assertion the VE's job numbers "were based on [her] 'professional experience' and [ ]time and motion theory" (Doc. 22 at 11) (citing R. 59) is factually unsupported. The portion of the record cited by the Commissioner does not include the quoted language he claims it does. Nor has the Court found any such language elsewhere in the VE's hearing testimony.